UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WARREN PRODUCERS, INC. | ) | |
| | ) | CASE NO. 05-13339 |
| Debtor(s) | ) | |
| | ) | |
| WARREN PRODUCERS, INC. | ) | |
| | ) | AP NO. 06-1047 |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DON ABBOTT, et al. | ) | |
| | ) | |
| Defendant(s) | ) | |

### MEMORANDUM-OPINION

This matter came before the Court for trial on the Complaint of Debtor Warren Producers, Inc. ("Debtor") against Defendants Don Abbott, Abbott's Oil Field Supply, Inc., Abbott's Supply Limited (collectively, "Abbott"), Frank Cox, ("Cox") and Imperial Gas Resources, LLC ("IGR") for Conversion. The Court considered the testimony of the witnesses, the documentary evidence submitted at trial and the written submissions of the parties. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

### FINDINGS OF FACT

Terry Goff is the owner of Debtor, an oil and gas developer located in Bowling Green, Kentucky. His son, Clint Goff, is the owner of Warren Exploration, a drilling company, that worked on various oil and gas wells in conjunction with Debtor. In 2001, Debtor expanded its business into Texas.

Abbott is the owner and operator of Abbott's Oil Field Supply, Inc., Abbott's Supply Limited and a related company, Imperial Supply Company. These companies are retail suppliers of products used in the oil production business.

Cox is the supervisor of field operations for IGR, a company that operates oil and gas wells. IGR acquired a number of oil and gas leases in Texas between 2000 and 2002. Cox and Goff had known each other for many years when Cox contacted Goff in 2001 to discuss operating wells together in Texas.

In 2002 and 2003, Debtor and IGR entered into a number of Letter Agreements concerning the drilling, construction and operation of a number of oil and gas wells. IGR initially was the operator of the oil and gas wells. Operational control of the wells was eventually to be turned over to Debtor after it procured the necessary operational permits and licenses.

In the course of constructing and operating the wells, piping was purchased from Cressman Tubular Products, Inc. by Debtor. Equipment was also purchased and supplied on credit to Debtor and IGR by Abbott. The piping that was not used in the construction of wells was stored on various lease sites of the Debtor in Pecos County, Texas. Debtor paid $5,000 to have racks built to store the unused piping.

At some point, a dispute regarding operational control over the wells developed between Debtor and IGR. On February 25, 2004, Cox sent Abbott a letter notifying him of IGR's dispute with Debtor and that operator's liens had been placed on a number of wells and leases that it operated with Debtor. In a subsequent telephone call, Cox told Abbott the unused pipe stored on several of Debtor's Leases in Pecos County belonged to Cox and IGR. Abbott, who had open accounts with both IGR and Debtor, had the pipe picked up and delivered to his business facility at

Imperial Supply Company. None of the pipe delivered to Abbott's facility had been purchased from Abbott. Abbott, with Cox's assistance, determined a value for the pipe. Abbott then, with Cox's approval, credited both IGR and Debtor's accounts for the value of the pipe. Abbott also billed Debtor an additional $6,973 for trucking charges incurred in connection with moving the pipe to his facility. Abbott estimated the wholesale value of the pipe picked up from Debtor's leases at $21,256.67. Abbott credited Debtor's account in the amount of $11,105.29. Abbott also credited IGR's account in the amount of $6,078.95 and gave IGR a future credit on purchases in the amount of $4,072.43.

Goff later learned from an employee of Debtor that the pipe was missing from Debtor's leases. Goff contacted the Pecos County Sheriff's Department and filed a police report on the missing pipe. In his report, Goff estimated the missing pipe that Debtor had purchased from Cressman Tubular Products and that was missing from the property at approximately $28,000. During the course of this lawsuit, Abbott submitted a Bill of Sale concerning certain pipe which included the pipe removed from the property. From the Bill of Sale, Goff was able to determine that the pipe missing from Debtor's leases was valued at $51,879.69 at the time of its purchase.

## **CONCLUSIONS OF LAW**

Debtor initially brought this action for conversion against Defendants in Ector County, Texas District Court. That action was then removed to this Court and is governed by Texas law on conversion.

To recover on a claim of conversion, Debtor was required to establish that property owned by it was converted and the value of that property. Conversion is the unauthorized and wrongful assumption or exercise of dominion and control over personal property of another to the exclusion

of, and inconsistent with, the owner's rights in the property. First State Bank, Morton v. Chisshir, 634 S.W.2d 742, 745 (Tex. Ct. App. 1982), citing Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 445 (Tex. 1971). A conversion defendant must intend to assert some right in the property to be held liable. However, that intent need not be an intent to assert a right of ownership or title; it can be an intent to assert a right of possession. Robinson v. National Autotech, Inc., 117 S.W.3d 37, 40 (Tex. Ct. App. 2003).

In this case, Debtor proved that it owned the pipe purchased from Cressman Tubular Products and the rack that the pipe was stored on at its various Pecos County Leases. Debtor further proved that the Defendants intended to and did assert a right of possession and ultimately, ownership over the pipe and rack. Abbott testified that Cox told him that the pipe belonged to him and IGR. However, Abbott's testimony contradicted this when he stated that he credited Debtor's account for the pipe and additionally billed Debtor for the trucking expenses associated with removing the rack and pipes. Abbott clearly admitted that he had the pipe and the rack removed to his facility based upon debts owed to him by Debtor and IGR. The only real dispute in this case is the value of the pipe.

All parties agree that at the time of the conversion, the pipe and rack were not new. Abbott testified that the wholesale value of the pipe was estimated at $21,251.67. Goff testified that Debtor paid $5,000 for materials and labor to build the rack and that the pipe was valued at $51,879.69 at the time it was purchased.

Generally, the measure of damages for conversion is the fair market value of the property at the time and place of the conversion. United Mobile Networks, L.P. v. Deaton, 939 S.W.2d 146 (Tex. 1997); Prewitt v. Branham, 643 S.W.2d 122, 123 (Tex. 1982). The purpose of damages is to

-4-

compensate the plaintiff for the actual losses sustained as a proximate result of the defendant's conversion. A conversion should not unjustly enrich either the wrongdoer or the complaining party. Id. The actual value of the property to the owner at the time of the conversion may also be a proper measure of damages when the property has no readily ascertainable fair market value. Burns v. Rochon, 190 S.W.3d 263, 270 (Tex. Ct. App. 2006). In determining fair market value and actual value, the Court may also consider the purchase price paid by the owner to determine damages for conversion. Id.

The testimony at trial established that the pipe was purchased in 2002 and the summer of 2003 for $51,879.69. The pipe was stored outside on a rack constructed by the Debtor at a cost of $5,000. The pipe and racks were converted by Abbott in March or April of 2004. The pipe was stored outside and had deteriorated, although Abbott was able to auction at least $4,000 of the pipe to other purchasers. The only other evidence in the record as to the value of the pipe at the time of the conversion was Abbott's wholesale estimate of $21,206.67. Abbott's testimony was based on the dollar figure that he credited to IGR's open account at the time of conversion: $6,078.95, the amount credited to Debtor's open account at the time of the conversion: $11,105.29, and the credit of $4,072.43 given to IGR for future purchases.

The Court finds that the evidence supports a finding on damages for conversion in Debtor's favor of $26,206.67. This includes the $5,000 for the racks and the fair market value of the pipe at the time it was converted, $21,206.67. While the Court considered Goff's testimony as to the value of the pipe at the time of purchase, that evidence was controverted by other evidence concerning fair market value at the time of the conversion.

While the Court finds the value of the property wrongfully converted by the Defendants is $26,206.67, this does not establish the value of Abbott's claim. Abbott cannot by virtue of his conversion exact a setoff on the amount owed it by Debtor by converting Debtor's property. See, Henderson v. Beggs, 207 S.W. 565 (Tex. Ct. App. 1918) (Texas law does not sanction conversion as a defense by a person who believes he is owed a debt by the rightful property owner.) Therefore, following entry of the Judgment in this case, Abbott may file an Amended Proof of Claim, subject to any objection by Debtor to determine its claim.

The Court may also award exemplary damages in a conversion case where there is a willful and knowing conversion under circumstances showing a lack of good faith. Geders .v Aircraft Engine and Accessory Co., Inc., 599 S.W.2d 646, 651 (Tex. Ct. App. 1981). In this case, Abbott testified that Cox told Abbott that the pipe was owned by IGR and Debtor. Abbott had the pipe removed because Debtor and IGR owed him funds on their unpaid accounts. Under Texas law, the debt did not justify the conversion. See, Henderson v. Beggs, 207 S.W. 565 (Tex. Ct. App. 1918). Here, the evidence established that Abbott and Cox knew the pipe at issue was owned by Debtor. This is supported by their testimony that credits were applied to Debtor's account. Furthermore, the fact that Abbott then billed Debtor for the trucking charges incurred in connection with the removal of the pipe establishes a lack of good faith on his part. The Court finds a reasonable amount of exemplary damages is the amount Abbott charged Debtor to remove its own property, $6,900.73.

## **CONCLUSION**

For all of the above reasons, Debtor is awarded Judgment against Defendants in compensatory damages of $26,206.67 and $6,900.73 in exemplary damages for a total award of $33,107.40.  A Judgment accompanies these Findings of Fact and Conclusions of Law.

# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WARREN PRODUCERS, INC. | ) | |
| | ) | CASE NO. 05-13339 |
| Debtor(s) | ) | |
| | ) | |
| WARREN PRODUCERS, INC. | ) | |
| | ) | AP NO. 06-1047 |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DON ABBOTT, et al. | ) | |
| | ) | |
| Defendant(s) | ) | |

## JUDGMENT

Pursuant to the Findings of Fact and Conclusions of Law entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is awarded in favor of Debtor Warren Producers, Inc. ("Debtor") against Defendants Don Abbott, Abbott's Oil Field Supply, Inc., Abbott's Supply Limited (collectively, "Abbott"), Frank Cox, ("Cox") and Imperial Gas Resources, LLC ("IGR") in the amount of $26,206.67 in compensatory damages and $6,900.73 in exemplary damages on its Complaint.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendant Abbott shall have 30 days from the date of entry of this Judgment to file an Amended Proof of Claim against Debtor in the underlying bankruptcy case, No. 05-13339.

This is a final and appealable Judgment and there is no just reason for delay.